■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MORTECHI AHARONOWICZ, Appellant.—Motion by the People for reargument of an appeal from a judgment of the Supreme Court, Suffolk County (McInerney, J.), rendered January 16, 1985, convicting him of attempted criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence, which was decided by decision and order of this court, dated December 31, 1986 *(see, People v Aharonowicz,* 125 AD2d 682).

Ordered that the motion is granted and, upon reargument, this court's decision and order dated December 31, 1986, is recalled and vacated, and the following decision and order is substituted therefor:

Appeal by the defendant from a judgment of the Supreme Court, Suffolk County (McInerney, J.), rendered January 16, 1985, convicting him of attempted criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence.

Justice Brown has been substituted for former Justice Lazer *(see,* 22 NYCRR 670.2 [c]).

Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence to an intermittent term of imprisonment of six months to be served on consecutive weekends from Friday at 6:00 P.M. until Sunday at 6:00 P.M.; as modified, the judgment is affirmed, and the case is remitted to the Supreme Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (5).

The defendant, who, at the time of trial, was 57 years old with no prior criminal record, was convicted of charges emanating from a police undercover operation in which he was targeted, from the outset, as a "fence" for stolen property. The

investigation of the defendant was allegedly prompted by information disclosed by several known burglars that the defendant was reputed to be a regular recipient of stolen goods. The defendant, however, claimed that he was designated a target of the undercover operation as a retaliatory measure, principally because he had been an outspoken critic of local law enforcement officials in his capacity as founder of the Huntington Station Merchant's Association Incorporated, an organization which was formed to help combat the rapidly accelerating crime situation within the area.

On or about February 3, 1984, Andre Collins, a community service aid employed by the Suffolk County Police Department, participated in the undercover operation by selling the defendant jewelry which he represented as having been stolen. This jewelry, which was valued at approximately $1,700, was sold to the defendant for the sum of $80. During his negotiations with Mr. Collins, which were memorialized on tape by a recording device which had been secreted on Collins's person, the defendant verbally acknowledged the representation that the jewelry had been "stolen", but nevertheless, consummated the transaction.

At the trial, the defendant called several witnesses who testified as to his good character. On appeal, the defendant contends, *inter alia,* that the trial court committed reversible error when it instructed the jury, within the course of a lengthy charge otherwise paralleling that contained in the Criminal Jury Instructions (1 CJI[NY] 12.05), that "evidence of good character is not of itself standing alone sufficient to raise a reasonable doubt". We disagree.

The law with respect to the weight to be accorded character evidence was, prior to the 1974 Court of Appeals decision of *People v Miller* (35 NY2d 65), unclear. In *Miller,* the court was confronted with "[t]he single question * * * [of] whether the trial court committed reversible error in refusing to charge as requested" *(People v Miller, supra,* at 67), i.e., that " '[a] reputation for good character, standing alone, may be sufficient to create a reasonable doubt, even though without it the other evidence may be convincing' ", and instead charging that " '[e]vidence of good character is not in and of itself sufficient to raise a reasonable doubt' " *(People v Miller, supra,* at 66). In affirming the conviction, the court rejected the formulation propounded by the defendant, observing that while it had previously approved the instruction in *People v Bonier* (179 NY 315, 321-322), the "better rule" was expressed in *People v Trimarchi* (231 NY 263, 266), where it had held

that: "Evidence of good character is not, of itself, sufficient to raise a reasonable doubt. Such evidence, in order to raise a reasonable doubt, must be believed by the jury. It then may, when considered with all the other evidence in the case, be sufficient to raise a reasonable doubt as to his guilt".

The defendant herein urges, however, that the more recent case of *People v Bouton* (50 NY2d 130) effected a change in the substantive law, or, at the very least, propelled the law in this regard into a state of uncertainty once again. He thus argues that when measured against the standard enunciated in *Bouton,* the charge delivered was erroneous and that reversal is warranted.

The impact of *Bouton,* however, must be considered in light of the context in which it arose. In *Bouton,* the Court of Appeals concluded that the trial court had erroneously precluded the defense from calling certain character witnesses because they were unqualified inasmuch as they did not reside in the community in which the defendant lived. In reversing the conviction and ordering a new trial, the court engaged in a brief overview of the law governing the admissibility of character evidence, providing some *"guiding observations"* *(People v Bouton, supra,* at 138; emphasis added), for the retrial: "It goes without saying that a defendant in a criminal prosecution may introduce evidence that his character is such as to render it improbable that he committed the crime of which he is accused *(People v Van Gaasbeck,* 189 NY 408). While the nature of the defendant's character is the object of the proof, reputation—the aggregate tenor of what others say or do not say about him—is the raw material from which that character may be established. Perhaps the most impressive measure of the respect the law accords the community's ability to judge character is that the reputation of an accused for traits which, in the common experience of mankind, would tend to make it unlikely that he committed a particular offense may in and of itself give rise to a reasonable doubt of guilt where none would otherwise exist *(People v Trimarchi,* 231 NY 263, 266; see 1 Underhill, Criminal Evidence [6th ed, 1973], §§ 192, 196; 1 Wigmore, Evidence [2d ed, 1940], § 56)" *(People v Bouton, supra,* at 138-139; *see, People v Ayala,* 118 AD2d 790).

We do not ascribe to the above-cited dicta the precedential significance urged upon us by the defendant. Even if it may be said that the dicta created an arguable ambiguity, which we would nevertheless reject, it cannot be said that it was intended to change the law of this State that "[s]tanding alone

\* \* \* character evidence is not sufficient to raise a reasonable doubt" (Fisch, New York Evidence § 183, at 108), and revert back to pre-*Trimarchi* law, in light of both the context in which the dicta was rendered and the court's definitive and well-reasoned pronouncement that "[c]haracter evidence does not exist in a vacuum, and its value, influence or the weight to be accorded it depends \* \* \* upon the other evidence in the case" *(People v Miller, supra,* at 69; *see, People v Caban,* 118 AD2d 957).

To the extent that the defendant's argument implicates the effect of this portion of the charge upon the entrapment defense, i.e., that the jury, in evaluating the testimony of the character witnesses as it impacted upon the predisposition element of the defense, would improperly reject the defense because of the instruction, we find it to be without merit. The charge, as it related to both the evaluation of character evidence and the entrapment defense, which were contained in entirely distinct portions of the charge, thus diminishing the potential for misapplication, conveyed the proper legal principles to the jury.

However, under the circumstances of this case, we deem the sentence imposed to be excessive to the extent indicated.

We have examined the remainder of the defendant's contentions and find them to be without merit. Bracken, J. P., Brown, Weinstein and Eiber, JJ., concur.